[Cite as *Jane Doe 1 v. Licate*, 2019-Ohio-412.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| JANE DOE 1, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellees, | : | |
| - vs - | : | **CASE NOS.** 2018-A-0019<br>2018-A-0020 |
| WILLIAM J. LICATE, et al., | : | |
| Defendants-Appellants. | : | |

Civil Appeals from the Ashtabula County Court of Common Pleas.
Case No. 2016 CV 0520.

Judgment: Affirmed in part and reversed in part; remanded.


*Patrick T. Murphy* and *Amanda Ackerman Condon*, Dworken & Bernstein Co., LPA, 60 South Park Place, Painesville, OH 44077 (For Plaintiffs-Appellees).

*David E. Pontius*, *Jeffrey A. Ford*, and *Jason L. Fairchild*, Andrews & Pontius LLC, 4817 State Road, Suite 100, P.O. Box 10, Ashtabula, OH 44005; *David Kane Smith* and *David S. Hirt*, Smith Peters Kalail Co., LPA, 6480 Rockside Woods Blvd. South, Suite 300, Cleveland, OH 44131 (For Defendants-Appellants William J. Licate, et al.)

*Richard C.O. Rezie* and *Markus E. Apelis*, Gallagher Sharp LLP, Sixth Floor, Bulkley Building, 1501 Euclid Avenue, Cleveland, OH 44115 (For Defendant-Appellant Jeffrey S. Farver).


TIMOTHY P. CANNON, J.

{¶1} Appellants—William J. Licate, Joseph F. Donatone, Alton Peck, Daniel D. Marling, Joe Allen, Gary Pasqualone (as administrator of the estate of Martha March), and Jeffrey S. Farver—appeal from the January 29, 2018 judgment of the Ashtabula

County Court of Common Pleas, overruling their motion for judgment on the pleadings. The judgment is affirmed in part and reversed in part.

{¶2} This case involves three school children, referred to as Jane Doe 1, Jane Doe 2, and Jane Doe 3 (appellees herein), who attended school at the Ashtabula Area City School District ("ASD"). Appellees allege they are victims of sexual misconduct by Virgil Murphy, an employee of ASD, who is now deceased.

{¶3} On August 17, 2016, appellees filed a lawsuit against ASD and certain other defendants. Jane Doe 1 filed suit in her own capacity; Jane Doe 2 and Jane Doe 3 filed suit by and through their father and natural guardian, referred to as John Doe. The complaint was twice amended. Appellants remained the only defendants, named in their individual and official capacities. The complaint states that at times relevant, Licate and Donatone were Superintendents of ASD; Peck and Marling were Business/Operations Officers; and Allen and Farver were Transportation Supervisors. Martha March was also named as a Transportation Supervisor, but she died before the lawsuit was filed; Pasqualone is the Administrator of March's estate.

{¶4} The complaint alleges that appellees were driven to school by Murphy, who was hired by ASD as a school bus driver in 2005. Appellees allege that between January 2005 and late 2009, Murphy made their home his first bus stop, assigned them seats directly behind him, gave them candy and cash, invited them to stand by him while he was driving, touched their legs, put his arm around them, and hugged them while on the bus. He allegedly placed a baseball cap over the security cameras on the school bus to conceal these actions.

{¶5} In late 2005, appellees were discussing the recent death of their grandfather while on the school bus. They allege that Murphy discovered his mother-in-law was a distant relative of their deceased grandfather, and he used that relationship to further ingratiate himself with appellees.

{¶6} Appellees allege that, on several occasions in or around 2009 or 2010, Murphy got one or more of them alone on his bus, parked in a remote area, covered the security camera with his baseball cap, and sexually assaulted them.

{¶7} Appellees further allege that on or about January 1, 2009, through September 7, 2010, Murphy sexually abused them in locations other than on the school bus, including his home, his car, and his church. Jane Doe 1 had begun home schooling after February 2010 and no longer rode the school bus.

{¶8} On or about September 7, 2010, appellees reported the alleged sexual abuse by Murphy to the Geneva Police Department. They allege that after reporting, Murphy was maintained as a school bus driver, and Jane Doe 2 and Jane Doe 3 continued to ride the bus with him.

{¶9} Appellees allege that Licate, Peck, and/or March had recommended the hiring of Murphy as a bus driver on or about January 19, 2005. According to appellees, Murphy lied on his application by indicating he had never been convicted of an offense of violence.

{¶10} The complaint states that after Murphy was hired, ASD received a report from the Ohio Bureau of Criminal Identification and Investigation ("BCI") on or about March 2, 2005, indicating Murphy had been arrested in 1995 for domestic violence,

3

resisting arrest, fleeing and eluding, and attempted assault on a police officer. The report also indicated a domestic violence conviction in 1995.

{¶11} Appellees reference R.C. 3319.39(B)(1)(a), which provided at Murphy's time of hire that "no board of education of a school district, * * * shall employ a person as a person responsible for the care, custody, or control of a child if the person previously has been convicted of or pleaded guilty to" a violation of R.C. 2919.25, domestic violence.

{¶12} Appellees allege that if Licate, Peck, and/or March had engaged in any further reasonable investigation, they would have discovered that Murphy had also been arrested in 1994 for disorderly conduct and resisting arrest; that the police had been called to Murphy's home in 2002 for an accusation of domestic violence; and that the police had been called to Murphy's home in 2003 for an accusation of sexually abusing his two-year-old granddaughter.

{¶13} The complaint further alleges that, during Murphy's employment at ASD, incident reports were filed with the police indicating Murphy was accused in 2005 of threatening his daughter-in-law with violence and death and of having previously assaulted her and was accused in 2007 of again sexually assaulting his granddaughter and a grandson, as well as threatening to assault a neighbor.

{¶14} Appellees allege that Donatone and Marling required Murphy to complete another background check in April 2011 for recertification as a bus driver, which again reported Murphy's 1995 arrests and domestic violence conviction. Appellees allege that Donatone and Marling failed to terminate Murphy or recommend his termination and failed to conduct a reasonable investigation that would have revealed the alleged history outlined above.

4

{¶15} In May 2011, Allen allegedly reprimanded Murphy for stopping to buy food items for two elementary school girls. Allegedly, the written reprimand indicates that Allen had spoken to Murphy on three prior occasions about giving gifts and money to students.

{¶16} The complaint states that Murphy was suspended without pay in August 2011 after Donatone and Marling received information that Murphy had again been charged with domestic violence. He was reinstated in September 2011 after the charge was amended to one of disorderly conduct. In November 2011, Murphy was placed on administrative leave due to parental complaints.

{¶17} Finally, appellees state that Murphy was indicted in December 2011 on eight counts of gross sexual imposition and two counts of rape, and that he was indicted in April 2012 on an additional count of rape. Appellees are the alleged victims of these offenses. Murphy was never tried for these crimes, however, as he died before trial.

{¶18} Appellees' second amended complaint alleges four counts of negligence, malicious purpose, and wanton and reckless conduct against appellants for failing to investigate Murphy's criminal background; recommending Murphy be hired; hiring Murphy; failing to monitor and investigate Murphy's conduct; and failing to report the alleged sexual abuse to the public children services agency. Appellees allege that as a direct and proximate result of appellants' acts and omissions, appellees were sexually assaulted and raped and suffered significant physical and emotional injury.

{¶19} Appellants filed a joint motion to dismiss, which was overruled by the trial court.

{¶20} On November 22, 2017, appellants filed motions for judgment on the pleadings.

{¶21} On January 22, 2018, appellees filed a "motion to amend the second amended complaint by interlineation instanter" to include the names of March and Farver in paragraph 74, wherein appellees alleged the employees failed to monitor and investigate Murphy after they knew or should have known of his alleged activities on the school bus and with students. Over appellants' objections, the trial court granted appellees leave to amend their second amended complaint by interlineation.

{¶22} The trial court overruled the motions for judgment on the pleadings on January 29, 2018, and the instant appeals followed.

{¶23} Appellants Licate, Donatone, Peck, Marling, Allen, and Pasqualone filed a joint appeal, assigned case No. 2018-A-0019; Appellant Farver filed an individual appeal, assigned case No. 2018-A-0020. Following separate briefing and oral arguments, the appeals were consolidated for purposes of disposition.

{¶24} The assignments of error raised by appellants in case No. 2018-A-0019 are as follows:

> [1.] The trial court erred when it failed to grant Defendants immunity from Plaintiffs' negligence claims.
>
> [2.] The trial court erred when it failed to grant Licate and Peck immunity from Plaintiffs' claim that they maliciously, and wantonly and recklessly, failed to investigate Murphy's criminal background and recommend to the Board that it hire him.
>
> [3.] The trial court erred when it failed to grant Donatone, Marling, Allen, and March immunity from Plaintiffs' claim that they maliciously, and wantonly and recklessly, failed to supervise Murphy.
>
> [4.] The trial court erred when it failed to grant Donatone and Marling immunity from Plaintiffs' claim that they maliciously, and wantonly and recklessly, failed to investigate Murphy's criminal background and recommend to the Board that it hire Murphy.

6

**{¶25}** The assignments of error raised by Farver in case No. 2018-A-0020 are as follows:

> [1.] The Trial Court erred in granting leave to Plaintiffs-Appellees to amend the second amended complaint by interlineation.
>
> [2.] The Trial Court erred by denying Jeffrey Farver's motion for judgment on the pleadings.

**{¶26}** We initially consider Farver's argument, under his first assignment of error, that the trial court erred by granting appellees leave to amend their second amended complaint by interlineation.

**{¶27}** Farver has appealed from the denial of his motion for judgment on the pleadings, which is generally not a final, appealable order. *See*, *e.g.*, *Steinbrink v. Greenon Local School Dist.*, 2d Dist. Clark No. 11CA0050, 2012-Ohio-1438, ¶16, citing R.C. 2505.02(B)(1). R.C. 2744.02(C) provides an exception to that general rule: "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." Thus, when the trial court denies a motion for judgment on the pleadings that, in effect, denies a political subdivision or its employee the benefit of an alleged immunity under R.C. Chapter 2744, the order is final and appealable. *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, syllabus.

**{¶28}** Appellate review under R.C. 2744.02(C) is, however, limited to the review of alleged errors that involve the denial of the benefit of an alleged immunity from liability. *See*, *e.g.*, *Riscatti v. Prime Properties Ltd. Partnership*, 137 Ohio St.3d 123, 2013-Ohio-4530, ¶20 (denying appellate review of the portion of an order overruling a motion for judgment on the pleadings related to a statute of limitations defense) and *Windsor Realty*

7

*& Mgt., Inc. v. Northeast Ohio Regional Sewer Dist.*, 8th Dist. Cuyahoga No. 103635, 2016-Ohio-4865, ¶15 (denying appellate review of the portion of an order overruling a motion to dismiss on grounds other than statutory immunity); *see also CAC Bldg. Properties v. Cleveland,* 8th Dist. Cuyahoga No. 91991, 2009-Ohio-1786, ¶9, fn. 1 and *Carter v. Complete Gen. Constr. Co.*, 10th Dist. Franklin No. 08AP-309, 2008-Ohio-6308, ¶8.

**{¶29}** The trial court's decision to grant appellees leave to amend their second amended complaint was made in a separate order than the one denying appellants' motions for judgment on the pleadings.  More important, the decision to allow appellees to amend their pleading did not deny Farver the benefit of his alleged immunity from liability under R.C. Chapter 2744.

**{¶30}** Accordingly, we do not have jurisdiction to address the merits of Farver's first assignment of error.

**{¶31}** We next consider appellants' arguments that the trial court erred in failing to grant them immunity by denying their motions for judgment on the pleadings.

**{¶32}** "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Civ.R. 12(C).  "Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief."  *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996) (citation omitted).

8

{¶33} Because the denial of a Civ.R. 12(C) motion presents only questions of law, appellate review is de novo. *Rinehart v. Martin*, 11th Dist. Portage No. 2013-P-0036, 2013-Ohio-4966, ¶15, citing *Rayess v. Edn. Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, ¶18.

{¶34} Under his second assignment of error, Farver argues that the trial court erred in determining he was sued only in his individual capacity rather than in his official capacity, and that the trial court should have engaged in an immunity analysis under R.C. 2744.02(B) rather than R.C. 2744.03(A)(6).

{¶35} "R.C. Chapter 2744 was enacted in 1985 and addresses when political subdivisions, their departments and agencies, and their employees are immune from liability for their actions. Determining whether a political subdivision is immune from liability under R.C. 2744.02 * * * involves a three-tiered analysis." *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, ¶8, citing *Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007-Ohio-2070, ¶10 and *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556 (2000). "A general grant of immunity is provided within the first tier, which states that 'a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.'" *Id.*, quoting R.C. 2744.02(A)(1).

{¶36} "The second tier in the immunity analysis focuses on the five exceptions to this immunity, which are listed in R.C. 2744.02(B). If any of the exceptions to immunity are applicable, thereby exposing the political subdivision to liability, the third tier of the

9

analysis assesses whether any of the defenses to liability contained in R.C. 2744.03 apply to reinstate immunity." *Id.* at ¶9, citing *Elston*, *supra*, at ¶11-12.

**{¶37}** "Immunity is also extended to individual employees of political subdivisions." *Id.* at ¶10, citing R.C. 2744.03(A)(6), *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, ¶47, *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, ¶17, and *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356 (1994). "For claims against individual employees, the three-tiered analysis used to determine whether a political subdivision is immune is not used." *Id.*, citing *Cramer*, *supra*, at ¶17. "Instead, R.C. 2744.03(A)(6) provides that an employee is personally immune from liability unless '(a) [t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or] (c) [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code.'" *Id.* "For these purposes, allegations of negligence are insufficient to overcome the immunity granted to an employee of a political subdivision who acts within his or her official duties." *Id.*, citing *Fabrey*, *supra*, at 356.

**{¶38}** "Moreover, if the employee acted in good faith and not manifestly outside the scope of his or her employment or official responsibilities, the political subdivision has a duty to provide a defense for the employee if a civil action or proceeding against the employee for damages is commenced." *Id.* at ¶11, citing R.C. 2744.07(A) and *Whaley v. Franklin Cty. Bd. of Commrs.*, 92 Ohio St.3d 574, 576 (2001). "The political subdivision has a further duty to indemnify and hold harmless an employee if a judgment is obtained against the employee for acts or omissions in connection with a governmental or

10

proprietary function, provided the employee acted in good faith and within the scope of his or her employment or official responsibilities." *Id.*, citing R.C. 2744.07(B) and *Whaley*, *supra*, at 578.

**{¶39}** In *Lambert*, the Ohio Supreme Court was asked to determine which R.C. Chapter 2744 analysis should be applied to a lawsuit in which the named defendant held an elected office within a political subdivision. *Id.* at ¶1. The complaint in *Lambert* named the only defendant as "Greg Hartmann, Hamilton County, Ohio Clerk of Courts." *Id.* at ¶6. Thus, the Court had to initially decide whether the plaintiff had sued the clerk of courts (i.e., Hartmann in his official capacity as the officeholder at the time the suit was filed), or whether the plaintiff had sued an *employee* of the clerk of courts' office (i.e., Hartmann in his individual capacity). *Id.* at ¶12.

**{¶40}** The *Lambert* Court determined the suit was brought against Hartmann in his official capacity, as the person who held the elected position of "clerk of courts" at the time suit was filed. *Id.* at ¶15. It reached this decision by looking at the caption of the complaint as well as the allegations in the complaint. The complaint did not include the words "personally," "individually," "an employee of," or anything similar. *Id.* "Additionally, the allegations in the state-filed complaint pertain[ed] to the policies and practices of the clerk of courts' office and not to actions taken by Hartmann personally. * * * In fact, some of the allegations pertain[ed] to policies and procedures employed by the clerk of courts' office prior to the time Hartmann became the clerk of courts." *Id.* at ¶16.

**{¶41}** The Court ultimately held that the three-tiered immunity analysis in R.C. 2744.02 applies to lawsuits in which the named defendant holds an elected office within

11

a political subdivision, such as the clerk of courts, and that officeholder is sued in his official capacity. *Id.* at ¶17.

{¶42} This court subsequently applied *Lambert* in determining whether a treasurer and superintendent of a school board had been sued in both their individual and official capacities. *Kravetz v. Streetsboro Bd. of Edn.*, 11th Dist. Portage No. 2011-P-0025, 2012-Ohio-1455. In *Kravetz*, the named defendants were the Board of Education, the School District, Linda Keller, and James Estille. On appeal, the defendants argued Keller and Estille had been sued only in their official capacities. *Id.* at ¶18. We disagreed that the complaint did not also include claims against Keller and Estille in their individual capacities. *Id.* at ¶24. The complaint stated that "'Keller and Estille are individuals employed by the Board of Education and/or School District in the capacity of Superintendent and Interim Treasurer respectively. Defendants Keller and Estille are sued in their individual capacities and in their official capacities due to their conduct as described herein.'" *Id.* "Additionally, the caption of the complaint named Keller and Estille individually and not in any representative capacity. Moreover, the allegations in the complaint, when taken as true and in favor of the non-moving party, must be construed to assert claims against Estille and Keller in their individual capacities." *Id.*

{¶43} Here, the caption of the complaint names "Jeffrey S. Farver, Individually and in his capacity as Transportation Supervisor for the Ashtabula Area City School District." The allegations of the complaint do not, however, challenge any policies and practices of the transportation supervisor's office. Also, neither the Board of Education nor the School District were named in the complaint. The complaint alleges that Farver personally engaged in actions that subject him to liability as an employee of ASD. Accordingly, the

12

trial court did not err in determining Farver was not sued in his official capacity and that the immunity analysis of R.C. 2744.02(B) did not apply. *See also Parmertor v. Chardon Local Schools*, 11th Dist. Lake Nos. 2014-L-129 & 2014-L-133, 2016-Ohio-761, ¶31 (citations omitted) (stating the substance of the allegations in the complaint, not the caption, determines its operative effect).

{¶44} Farver's argument is not well taken.

{¶45} Appellants next maintain that, even in their individual capacities as employees of ASD, the trial court erred in failing to grant them immunity on appellees' negligence claims and on appellees' claims that appellants acted maliciously, wantonly, recklessly, or in bad faith.

{¶46} Again, R.C. 2744.03(A)(6) provides that an employee of a political subdivision is immune from liability in a civil action brought "to recover damages for injury, death, or loss to person or property allegedly caused by an act or omission in connection with a governmental or proprietary function" unless one of the following exceptions applies:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. * * *

{¶47} Appellees' second amended complaint does not allege that any of appellants' acts or omissions were manifestly outside the scope of their employment or official responsibilities nor does it allege civil liability imposed by a separate section of the Revised Code. Thus, the complaint does not allege facts that would overcome the

13

relevant statutory immunity regarding any claim for *negligent* acts or omissions. Therefore, the trial court erred in failing to grant appellants' motions for judgment on the pleadings as to the negligence claims.

{¶48} The first assignment of error brought by appellants under case No. 2018-A-0019 has merit.

{¶49} The only relevant exception to appellants' immunity as employees of ASD is for any acts or omissions committed with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶50} "Malice" is characterized by "hatred, ill will or a spirit of revenge," or "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty,* 32 Ohio St.3d 334, 336 (1987). "Bad faith" connotes a "dishonest purpose" or "conscious wrongdoing." *Canfora v. Coiro*, 11th Dist. Lake No. 2006-L-105, 2007-Ohio-2314, ¶72. "Wanton" misconduct is the failure to exercise any care whatsoever towards those to whom a duty of care is owed under circumstances where there is a great probability that harm will occur. *Hawkins v. Ivy*, 50 Ohio St.2d 114, 117-118 (1977). "Reckless" conduct includes actions where one possesses a "perverse disregard of a known risk" and where the actor is conscious that his conduct will in all probability result in injury. *O'Toole*, *supra*, at ¶73-74; *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, paragraph four of the syllabus (reckless conduct is "substantially greater than negligent conduct").

{¶51} These mental states have been summarized as "a willful and intentional design to do injury without just cause or excuse (88 Ohio Jurisprudence 3d, Torts Section 1) or a failure to exercise any care when the probability of harm is great, and that

14

probability of harm is known to the actor (70 Ohio Jurisprudence 3d, Negligence Section 34)." *Smith v. McCarty*, 9th Dist. Summit No. 15670, 1993 WL 6280, *2 (Jan. 13, 1993); *see also Vidovic v. Hoynes*, 11th Dist. Lake No. 2014-L-054, 2015-Ohio-712, ¶52, quoting *Piispanen v. Carter*, 11th Dist. Lake No. 2005-L-133, 2006-Ohio-2382, ¶28.

{¶52} Appellants argue that appellees failed to plead sufficient operative facts to establish that appellants acted with the requisite mental states. Civ.R. 9(B) provides, however, that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." In addition, Civ.R. 8(A) requires only a "short and plain statement of the claim" and a demand for judgment.

{¶53} Construing the material allegations in the second amended complaint as true and drawing all reasonable inferences therefrom in favor of appellees, we conclude there may be a set of facts that could entitle appellees to recover from appellants individually. Any defenses appellants may have to individual liability must be established through the discovery process and will not be assumed for purposes of analyzing whether a Civ.R. 12(C) dismissal is appropriate. *See Kravetz, supra*, at ¶28, citing *Ganzhorn v. R & T Fence Co., Inc.*, 11th Dist. Portage No. 2010-P-0059, 2011-Ohio-6851, ¶13. It is premature, at this stage of the proceedings, to dismiss as insufficient the allegations of malicious purpose, bad faith, or wanton or reckless conduct. *See Parmertor, supra*, at ¶51. As a result, it is also premature to dismiss appellees' claim for punitive damages against the individual defendants, as they may be awarded when a defendant acts with actual malice. *See Jack F. Neff Sand & Gravel, Inc. v. Great Lakes Crushing, Ltd.,* 11th Dist. Lake No. 2012-L-145, 2014-Ohio-2875, ¶77, citing *Preston, supra*, at 336.

{¶54}  The trial court did not err in failing to grant appellants' motions for judgment on the pleadings with regard to the claims of bad faith, malicious purpose, or wanton and reckless conduct.

{¶55}  We reach this conclusion with one limitation, however.  In their second amended complaint, appellees allege that Jane Doe 1 stopped riding the bus in February 2010.  Accordingly, judgment on the pleadings should have been granted in favor of appellants for any conduct alleged to have occurred after February 2010 with regard to Jane Doe 1.

{¶56}  Farver's second assignment of error and the second, third, and fourth assignments of error brought by the remaining appellants have merit to the extent indicated.

{¶57}  Judgment on the pleadings should have been granted on appellees' claims for negligence as well as any claims for conduct alleged to have occurred with regard to Jane Doe 1 after she stopped riding the school bus in February 2010.  The remainder of the trial court's entry is upheld.

{¶58}  The judgment of the Ashtabula County Court of Common Pleas is affirmed in part and reversed in part; this matter is remanded for further proceedings consistent with this opinion.


CYNTHIA WESTCOTT RICE, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents.